UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KELTON L. SPANN                                    CIVIL ACTION

VERSUS                                             NO. 16-4126

SHERIFF RODNEY STRAIN ET AL.                       SECTION "E" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Kelton L. Spann, was a prisoner formerly incarcerated in the St. Tammany Parish Prison in Covington, Louisiana.  He paid this court's filing fee and filed this complaint pro se pursuant to 42 U.S.C. § 1983 against St. Tammany Parish Sheriff Rodney J. Strain, Lieutenant Jerry P. Miller, Jr., Deputy Patrick Smith and Detective Shane Wilkinson ("the Sheriff's Defendants"), and four civilian defendants, Tommy Warder, Allen Tingle, Robert Hanson and Lester Mitchell, who worked for St. Tammany Workforce Solutions, LLC ("the Workforce Solutions Defendants"), a work-release program and halfway house in which plaintiff participated.

Spann alleges that, while he was incarcerated in the St. Tammany Parish Prison and the work release program, (1) the Workforce Solutions Defendants delayed his release from prison on his conviction by failing timely to send to the Louisiana Department of Public Safety and Corrections ("DOC") a certification that Spann had completed a rehabilitation program on December 16, 2015 that qualified him for early release; (2) although he was scheduled for early release on January 13, 2016, defendants extended his

release date until June 24, 2016 in retaliation for his having sent an Administrative Remedy Procedure ("ARP") grievance to Secretary James Le Blanc of the DOC on December 31, 2015, complaining that defendants had not timely sent the certification to the DOC; (3) in retaliation for that grievance and for his having told defendant Tingle that plaintiff would bring defendants Tingle and Mitchell before a federal judge regarding their failure to send a timely certification, defendants filed a false disciplinary charge against him and that his conviction on the disciplinary charge resulted in the loss of 180 days of "good time" credit; (4) also in retaliation for the grievance and for having told Tingle that plaintiff would bring Tingle and Mitchell before a federal judge, defendants filed a false criminal charge against him, which further delayed his release from June 24 until August 4, 2016; (5) the Workforce Solutions Defendants destroyed plaintiff's property in retaliation for his complaint about their delay in sending in his certification; (6) defendants discriminated against Spann, an African-American, based on his race because Caucasian prisoners who were caught with mojo did not receive disciplinary or criminal charges; and (7) Sheriff Strain failed to train and supervise his employees properly to prevent the alleged constitutional violations.  Plaintiff seeks compensatory and punitive damages.  Record Doc. No. 6, Complaint at p. 38.

On August 11, 2016, I conducted a telephone conference in this matter.  Record Doc. No. 18.  Participating were plaintiff pro se and Chadwick Collings, counsel for the

2

Sheriff's Defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

Collings stated during the conference and in a subsequent letter to the court that the Workforce Solutions Defendants were never Sheriff's employees, but that they operated a halfway house under a contract with the Sheriff on property leased from the Sheriff. Collings stated that Workforce Solutions vacated the building when the lease expired on July 1, 2016, and that he had no information about the home addresses of the Workforce Solutions Defendants. Record Doc. No. 23.

Plaintiff received an extension of time to serve the Workforce Solutions Defendants. Record Doc. No. 33. After returns of service on these defendants were filed in the record, Record Doc. Nos. 36-39, defendants moved on November 10, 2016 for an extension of time to answer the complaint. Record Doc. No. 41.

Following the telephone conference, plaintiff provided the court with an extract of minutes of the Twenty-Second Judicial District Court for St. Tammany Parish dated August 15, 2016, stating that the matter of State of Louisiana vs. Kelton Spann, No. 572160, was "nolle prossed." Record Doc. No. 35 at p. 3. Staff of the undersigned magistrate judge confirmed with the Clerk of that court that Spann was charged with a single count of possession with intent to distribute marijuana, which was dismissed at the State's request on August 15, 2016.

3

After the hearing, Spann sent to the court a copy of several ARP grievances that he had filed with St. Tammany Parish prison officials in 2016 and the disciplinary hearing records.  Record Doc. No. 24.  His submission did <u>not</u> include the ARP that he allegedly sent to Secretary Le Blanc on December 31, 2015.

## **THE RECORD**

Spann testified that he had been incarcerated in the St. Tammany Parish prison from January 2016 until August 4, 2016, when he was released after serving his sentence on a January 21, 2010 conviction[1] for drug and gun charges.  He said that the Workforce Solutions Defendants operated and/or worked for the halfway house where he was staying on a work-release program.

Plaintiff stated that his first claim is that defendants delayed releasing inmates, including himself, who had earned good time credit.  He testified that his second claim is that the delayed release in his case was retaliatory.  He said that defendants held up his good time release beginning on December 31, 2015.  He testified that he was certified on December 16, 2015, as having completed a reentry rehabilitation program called CTRP ("Certified Treatment and Rehabilitation Program") offered by the DOC and that the certificate qualified him for early release on January 13, 2016.  Spann stated that defendant Mitchell, the director of Workforce Solutions, was supposed to send the

---

[1]Plaintiff's complaint states that he was convicted on January 14, 2010.

4

certificate to the DOC, but that Mitchell did not send it until sometime in January 2016, after plaintiff filed an Administrative Remedy Procedure ("ARP") complaint with the DOC on December 31, 2015 about the delay in his release.

Spann testified that defendants' continued delay in sending the certificate after that date was in retaliation for his ARP grievance. He stated that defendant Corporal Smith informed him that the prison had received his diminution of sentence papers, but that a disciplinary report had been faxed to the prison from Workforce Solutions on the same date, so plaintiff would be held until the next day for a disciplinary hearing.

Plaintiff alleges that the disciplinary charge was false and that the charge and the hearing were retaliatory. He testified that he returned to the jail from the hospital on January 9, 2016, but that no disciplinary charge was issued until January 13, 2016, the same day that his diminution of sentence papers came and the DOC ordered his release. He stated that the disciplinary action came to the prison the day after the DOC ordered his release. He said he was held until June 24, 2016, when the DOC released him from the sentence that he was serving.

Spann said that the DOC administered the disciplinary charge at the Rayburn Correctional Center in Angie, Louisiana, where the disciplinary board was sitting, and that the board took away his good time as a result of the disciplinary proceedings. He stated that, although he was incarcerated at the St. Tammany Parish prison, disciplinary actions for DOC prisoners are conducted at Rayburn. He testified that the DOC held him beyond

the date of his scheduled release because his good time had to be forfeited, based on the disciplinary charge.

Plaintiff said that the disciplinary write-up came from Workforce Solutions on January 13, 2016, and charged him with having smoked mojo and passed out as a result. However, he said his medical records show that this was not true. He stated that defendants charged him with smoking mojo in retaliation for his complaint to Secretary Le Blanc that defendants had delayed sending the certificate of completion.

Spann testified that he passed out while working on the line at Sunbelt Plastics on January 6, 2016, and was sent to the hospital emergency room. He said he ate "Roman Noodle" soup containing a lot of sodium for lunch that day and then passed out. He stated that the doctor told him he had passed out because he was a diabetic, which he had not previously known, and because he had an "infection" in his blood, although he said he might be mispronouncing the word that the doctor told him.

Spann testified that he was taken to Slidell Memorial Hospital, where defendant Tingle, the CEO of Workforce Solutions, came to see him on January 8, 2016, and asked him about smoking synthetic marijuana. Spann said he complained to Tingle that Tingle had allowed Mitchell to withhold sending in "our credits" and sometimes not to send in the credits about "classes we had completed." Plaintiff said he told Tingle that, if Tingle did not correct the problem, Spann would present his complaints about Tingle and Mitchell to a federal judge.

6

Plaintiff testified that the disciplinary write-up for using synthetic marijuana was faxed to the St. Tammany Parish prison from Workforce Solutions on January 13, 2016. He alleged as his third claim that the write-up was false.  He said the write-up was in retaliation for having filed his ARP complaining to the DOC about the delay in his release and for having spoken to Tingle in the hospital about allowing Mitchell not to send in Spann's credits for weeks after he was supposed to be released.  Spann stated that the medical records from Slidell Memorial Hospital prove that the charge was false.  He said the records show that he passed out because he had high blood pressure and high levels of both salt and sugar in his blood.  He denied that he had used mojo on the day he passed out.

Spann testified that he attended a hearing on January 14, 2016 at the St. Tammany Parish jail that was conducted via satellite with the disciplinary board at Rayburn.  He said he had several hearings on the same charge because of his appeals and other delays, and that the last hearing was in May 2016.  He stated that he was allowed to give his own statement, but not to present other evidence, such as medical records, on his own behalf at the hearings.  He said that no one else gave a statement and that there was a supplemental report, but he did not have a copy of it.  He testified that a Mr. McLeod was on the disciplinary board at the first hearing, but he did not recall the names of anyone else on the board.

Plaintiff stated that he was found guilty of the disciplinary charge in May 2016 and that his penalty was the loss of 180 days of good time.  He testified that he was not released from the DOC sentence until June 2016.  He said he was charged criminally in St. Tammany Parish district court with using synthetic marijuana, based on the same incident, and was held as a pretrial detainee in the St. Tammany Parish prison until August 2016 when he was released on bond.  He testified that the charge would be dismissed soon because the lab reports from the hospital showed no illegal substance in his blood.

Spann said he was <u>not</u> making a claim that the halfway house had an inadequate law library.  As to his third claim of race discrimination, he testified that he is African-American and was not caught with mojo in his possession, but was falsely charged.  He said that Cody Page and Jeremy Hobgood, white men in the same work-release program as he, were caught with the substance in their possession, but were neither disciplined nor charged criminally.

Plaintiff stated that Page was at the same halfway house and was caught with mojo in 2015, but nothing happened to Page.  Spann said that Hobgood was searched and found with mojo in his possession on May 30, 2016.  He testified that Hobgood was sent back to the jail with a disciplinary write-up, but no criminal charge or discipline was imposed on Hobgood.  Plaintiff said that Hobgood's disciplinary write-up was never processed.

Spann testified that another white man, whose name he did not know, passed out at Copeland's Restaurant in Covington, Louisiana, while on work release and an ambulance was called. Plaintiff said that this man "allegedly had synthetic marijuana in his pocket," for which he was disciplined, but not charged criminally.

Plaintiff stated that he has another claim for retaliation based on destruction of his personal possessions. He said that, after he told Tingle at the hospital on January 8, 2016 that he would see Tingle and Mitchell before a federal judge, these defendants allowed trustees to take everything out of Spann's locker, and they either threw away or kept his property, such as an MP3 player, an electronic tablet, a chauffeur's license that had cost him $87, his Social Security card and some law books. Plaintiff said he was transferred from the hospital to the jail on January 9, 2016 and never went back to the halfway house, which he alleged was also retaliatory.

Spann testified that his last claim is that the Sheriff failed to supervise or train his employees properly to prevent the violations of his rights described above and that the Sheriff knew about a lot of the conduct at the time. Plaintiff stated that defendants Tingle, Mitchell, Warder and Hanson did not work for the Sheriff, but had a contract with the Sheriff.

Plaintiff said that Detective Wilkinson retaliated and racially discriminated against him by assisting the other defendants in filing false disciplinary and criminal charges against him. Spann testified that defendant Miller held Spann's release papers for a day

9

in order to bring plaintiff before a disciplinary board.  Plaintiff said that Mitchell told Miller not to release him and that Miller participated in the retaliatory and racially discriminatory disciplinary charge against him and in his delayed release.  Spann stated that defendants Smith and Miller were not involved with the criminal charge against him, but were involved in the retaliatory disciplinary charge.

## ANALYSIS

I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Lee v. Hennigan, 98 F. App'x 286, 287 (5th Cir. 2004) (citing Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998)); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998); Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis v. Charlotte Corr. Inst. Emps., 589 F. App'x 950, 952 (11th Cir. 2014); Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

10

A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998); <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005.  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504

U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff,

dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's complaint that fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(A)(b)(1) and 42 U.S.C. § 1997e(c)(1), either as frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[2]

## II.   RETALIATION

Spann alleges that, because he complained to Secretary Le Blanc on December 31, 2015 that defendants had not sent his certificate to the DOC immediately after his December 16, 2015 completion of a CTRP and because he complained to Tingle about the same delay while he was in the hospital on January 8, 2016, defendants retaliated against him by (1) delaying his release past his scheduled early release date of January 13, 2016; (2) transferring him from the hospital to the jail, instead of back to the halfway house; (3) filing false disciplinary and criminal charges against him that led to his

---

[2]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

conviction on the disciplinary charge with a penalty of loss of good time and to detaining him as a pretrial detainee on the criminal charge until August 4, 2016, after he had completed his DOC sentence on June 24, 2016; and (4) confiscating his personal property from his locker.

It is correct that prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts or to complain through proper channels about alleged misconduct by prison officials. Walker v. Savers, No. 15-10364, 2016 WL 4151212, at *5 (5th Cir. Aug. 4, 2016) (citing Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006)); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995). However, the law in the Fifth Circuit concerning prisoner retaliation claims has undergone substantial evolution in recent years. It is based on the following general principles:

> The elements of a retaliation claim are the invocation of a specific constitutional right, the defendants' intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, i.e., but for the retaliatory motive the complained of incident . . . would not have occurred. With respect to the last element, we [have] emphasized that an action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, may have been legitimate.

Clarke v. Stalder, 121 F.3d 222, 231 (5th Cir. 1997), vacated in part & reinstated in relevant part, 154 F.3d 186 (5th Cir. 1998) (citing Bounds v. Smith, 430 U.S. 817 (1977); Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Woods, 60 F.3d at 1164-66)

(quotations and additional citations omitted); <u>accord</u> <u>Walker</u>, 2016 WL 4151212, at *5;

<u>Hanna v. Maxwell</u>, 415 F. App'x 533, 535 (5th Cir. 2011).

In <u>Woods</u>, the Fifth Circuit, applying the general First Amendment principles addressed above, affirmed the district court's denial of defendants' motion for summary judgment. Defendants had sought dismissal of a prisoner's claim based on allegedly false disciplinary charges by defendants in alleged retaliation for plaintiff's letters of complaint to a federal judge and the prison warden. The Fifth Circuit agreed with the district court that the inmate's retaliation claim should be permitted to proceed, but in doing so it expressed the following caution: "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." <u>Woods</u>, 60 F.3d at 1166 (citation and quotation omitted). The Fifth Circuit warned that "trial courts must carefully scrutinize these claims." <u>Id.</u>

> To state a claim of retaliation <u>an inmate must allege the violation of a specific constitutional right</u> and be prepared to establish that <u>but for</u> the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate . . . . The inmate must produce <u>direct evidence of motivation</u> or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

<u>Id.</u> (citations omitted) (emphasis added); <u>accord</u> <u>Walker</u>, 2016 WL 4151212, at *5.

A year after <u>Woods</u> was decided, the Supreme Court reexamined the scope of prisoners' First Amendment right of access to the courts in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996).  Significantly, to state a claim that his constitutional right of access to the courts was violated, a prisoner must demonstrate that his position as a litigant was actually prejudiced.  <u>Id.</u> at 356; <u>Every v. Jindal</u>, 413 F. App'x 725, 727 (5th Cir. 2011) (citing <u>Lewis</u>, 518 U.S. at 349-50; <u>Jones v. Greninger</u>, 188 F.3d 322, 325 (5th Cir. 1999)); <u>Cochran v. Baldwin</u>, 196 F. App'x 256, 257-58 (5th Cir. 2006) (citing <u>Lewis</u>, 518 U.S. at 350-51); <u>Eason v. Thaler</u>, 73 F.3d 1322, 1328 (5th Cir. 1996).  In <u>Lewis</u>, the Supreme Court made clear that an inmate <u>must establish actual injury</u> to state a claim for denial of his right of access to the courts.  <u>Id.</u> at 349-50.

A few years ago in <u>Morris</u>, a case of first impression in the Fifth Circuit, the court addressed "[w]hether an allegation of <u>de minimis</u> retaliatory acts can support a retaliation claim" under the First Amendment.  <u>Morris</u>, 449 F.3d at 684.  The court stated that

> [t]he question, however, is not whether the violation of [plaintiff's] constitutional rights was <u>de minimis</u>, but whether any violation occurred at all.  To establish a constitutional violation, an inmate must show that he suffered a qualifying adverse retaliatory act.  If the retaliation alleged by [plaintiff] does not pass this bar, he has suffered no constitutional injury.

<u>Id.</u>  The Fifth Circuit held that

> [t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights.  Some acts, though maybe motivated by retaliatory intent, are so <u>de minimis</u> that they would not deter the ordinary person from further exercise

16

of his rights.  Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.

.  .  .  .  Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. . . .

With this standard in mind, we turn to the specific retaliation alleged by [plaintiff] to determine whether the actions of the [prison] officials would have deterred a person of ordinary firmness from exercising his First Amendment right to file grievances against prison officials.

Id. at 686 (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)).

The Fifth Circuit's reasoning and rulings in Morris accord with the Supreme Court's holding in Lewis that a prisoner who brings a retaliation claim under the First Amendment must allege actual injury in order to assert a claim.  Furthermore, the alleged retaliatory acts must be more than de minimis, which means they must be capable of deterring a person of ordinary firmness from further exercising his constitutional rights.  A "loss of 180 days of 'good time' credit [is] more than mere de minimis adverse actions under this Circuit's case law." Hanna, 415 F. App'x at 536 (citations omitted).

Thus, the law in the Fifth Circuit

is well established that prison officials may not retaliate against an inmate who exercises his right of access to court.  Officials likewise may not retaliate against an inmate for using the grievance system.  A plaintiff must allege facts showing that the defendant possessed a retaliatory motive.  The inmate must show more than his personal belief that he was the victim of retaliation.  Mere conclusory allegations of retaliation are not enough.

Decker v. McDonald, No. 5:09cv27, 2010 WL 1424322, at *15 (E.D. Tex. Jan. 11, 2010), report & recommendation adopted, 2010 WL 1424292 (E.D. Tex. Apr. 7, 2010) (citing

17

Morris, 449 F.3d at 687; Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999);

Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Moody v. Baker, 857 F.2d 256,

258 (5th Cir. 1988); Whittington v. Lynaugh, 842 F.2d 818, 820 (5th Cir. 1988))

(additional citations omitted) (emphasis added); accord Walker, 2016 WL 4151212, at *5.

Accepting as true plaintiff's testimony and written allegations, he has not

established that a violation of his federal constitutional rights has occurred under the

circumstances described in his complaint. As an initial matter, Spann cannot show either

a retaliatory motive for the delay in his release after December 31, 2015; his transfer from

the hospital to the jail on January 9, 2016; the filing of a disciplinary charge on January

13 and a criminal charge on January 22, 2016; or the loss of his personal property; or that,

but for retaliatory motives, these acts would not have occurred.

First, Spann's allegation that defendants retaliated against him because he told

Tingle that he would bring Tingle and Mitchell before a federal judge does not state an

actionable claim. In Hanna, the Fifth Circuit held that plaintiff

> has not made out a claim for retaliation for exercise of any other
> constitutional right . . . . Although complaining about the conduct of
> corrections officers through proper channels is a constitutionally protected
> activity, Hanna did not allege that he suffered retaliation after complaining
> through proper channels; rather, he alleged retaliation after threatening to
> file a lawsuit during a confrontation with corrections officers.

Hanna, 415 F. App'x at 536 (citing Morris, 449 F.3d at 684) (emphasis added); accord

Wilson-El v. Majors, No. 1:12-CV-638-TWP-DML, 2014 WL 4594436, at *9 (S.D. Ind.

Sept. 15, 2014) (citing Hanna, 415 F. App'x at 536; Jones v. Book, 404 F. App'x 169 (9th Cir. 2010)); see also Peters v. Quarterman, 252 F. App'x 705, 706 (5th Cir. 2007) (oral threat to expose corrections officer's alleged misconduct is not exercise of specific constitutional right); Triplett v. LeBlanc, No. 13-243-JWD-RL, 2015 WL 893057, at *7 (M.D. La. Mar. 2, 2015), appeal dismissed, 642 F. App'x 457 (5th Cir.), cert. denied, 2016 WL 3767292 (2016) (citing Hanna, 415 F. App'x at 536; Morris, 449 F.3d at 684; Thomas v. Thomas, 46 F. App'x 732, 2002 WL 1973888, at *1 (5th Cir. 2002)) (Inmate's claim that defendant retaliated against him for speaking out at a meeting was not "an assertion of a complaint through 'proper channels' so as to support a claim of retaliation."). As in Hanna, Spann's retaliation claim based on his threat to file a lawsuit does not assert a violation of a specific constitutional right and should be dismissed.

Second, Spann has neither alleged nor shown that any defendant in the Sheriff's department or at Workforce Solutions knew that plaintiff sent a complaint to Secretary Le Blanc on December 31, 2015. No such complaint is included in the St. Tammany Parish prison ARP and disciplinary records that plaintiff submitted to the court. No defendant could have retaliated against Spann for an action about which the defendant was unaware. The allegedly retaliating official must have known of the inmate's prior, constitutionally protected activity as a prerequisite to showing both the official's retaliatory intent and but-for causation. Booth v. King, 228 F. App'x 167, 172 (3d Cir. 2007); Muniz v. Childers, 85 F.3d 623, 1996 WL 255193, at *1 (5th Cir. 1996); Pratt v. Rowland, 65 F.3d 802, 808

(9th Cir. 1995); <u>Mckinney v. Cucinella</u>, No. 15-7442, 2016 WL 3191241, at *6 (D.N.J. June 2, 2016); <u>Griffin-El v. Beard</u>, No. 06-2719, 2013 WL 228098, at *5 (E.D. Pa. Jan. 22, 2013) (citing <u>Booth</u>, 228 F. App'x at 172; <u>Laskaris v. Thornburgh</u>, 733 F.2d 260, 265 (3d Cir. 1984); <u>Jacobs v. Pa. DOC</u>, No. 04-1366, 2009 WL 3055324, at *9 (W.D. Pa. Sept. 21, 2009)); <u>see also</u> <u>Manning v. Chevron Chem. Co., LLC</u>, 332 F.3d 874, 883 n.6 (5th Cir. 2003) ("If the decisionmakers [in a Title VII retaliation case] were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity.").

Even if any defendant knew of plaintiff's complaint to Secretary Le Blanc, Spann has not produced any direct evidence of retaliatory motivation, a chronology of events from which retaliation may plausibly be inferred or that, but for retaliatory motives, the complained of acts would not have occurred. The medical records show that Spann was taken to the Slidell Memorial Hospital emergency room on January 6, 2013, after being found on the floor in an unresponsive state, and that two other inmate workers told emergency medical services personnel that Spann had been smoking mojo. Plaintiff's preliminary diagnoses were "altered mental status, acute respiratory failure, [and] polysubstance ingestion/mojo ingestion." The hospital records state that the other two workers were sent to a different hospital for mojo ingestion. The initial plan of care was to treat Spann for acute respiratory failure "secondary to suspected polysubstance

20

overdose," a suspected cardiovascular accident (stroke) and accelerated hypertension (high blood pressure).  Salt levels in his blood were in the normal range.  Although plaintiff's blood glucose readings were somewhat high, they were not in the "acute" range, and there is no mention of diabetes in any of the medical records from the hospital or prison.  The hospital records contain no discharge diagnosis, but the patient discharge instructions focused on medications to control high blood pressure and education about stroke risk.  The prison medical records after Spann's return state that he had suffered a syncopal (fainting) episode and hypertension.  The prison doctor treated him only for hypertension and asthma over the next three months.  Record Doc. No. 34.

In addition, the disciplinary and ARP records submitted by plaintiff show that the Warden at Rayburn on April 20, 2016 denied Spann's appeal of his disciplinary conviction for possession of contraband.  The Warden's denial states that a Sheriff's detective had interviewed plaintiff's two co-workers, who were also taken by ambulance to a hospital, and that the two men told the detective that they and Spann had smoked mojo during a work break.  The decision states that mojo was found in plaintiff's locker at his workplace during the Sheriff's subsequent investigation.  Record Doc. No. 24-2 at pp. 3-4.

The record, including Spann's testimony, the medical reports and the disciplinary records, does not support an inference of retaliatory motive.  The Fifth Circuit has stated that the existence of a "[legitimate] prison disciplinary report is highly probative, if not

dispositive, of whether a defendant acts with a retaliatory animus." Rankin v. Pearson,
No. 5:11CV138-DCB-RHW, 2013 WL 1305517, at *6 (S.D. Miss. Mar. 26, 2013), aff'd,
612 F. App'x 204 (5th Cir. 2015) (citing Woods, 60 F.3d at 1166); accord Reese v.
Skinner, 322 F. App'x 381, 383-84 (5th Cir. 2009). Based on the evidence in the medical
records and revealed by the Sheriff's investigation that plaintiff had possessed mojo on
the day he passed out while on work release, defendants "had an obligation to
[investigate] if and when [plaintiff's] behavior deviated from acceptable norms. . . .
[S]uch evidence does not demonstrate 'but for' causation; it demonstrates that
[defendants] had a perfectly reasonable, non-retaliatory motivation for" charging Spann
with possession of contraband and delaying his early release so they could hold a
disciplinary hearing, which resulted in his conviction and loss of good time credits;
transfer from the hospital to the jail; a criminal charge of possession of marijuana with
intent to distribute; and confiscation of his personal property from the locker where mojo
had been found. Walker, 2016 WL 4151212, at *6 (quotation omitted) (citing McDonald,
132 F.3d at 231).

Plaintiff's allegations that these actions by defendants were in retaliation for his
having complained to Secretary Le Blanc do not give rise to any plausible inference of
retaliatory motive on the part of defendants and therefore do not "state a claim to relief
that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation
omitted); see Wolters v. Fed. Bureau of Prisons, 352 F. App'x 926, 928 (5th Cir. 2009)

22

(citing <u>Jones</u>, 188 F.3d at 325; <u>McDonald v. Steward</u>, 132 F.3d 225, 231 (5th Cir. 1998))

(claim that prison officials retaliated against inmate when they denied his requests to be

assigned to a different unit of the prison and deliberately housed him with gang-affiliated

inmates "fails because Wolters has not presented any evidence that any prison official

acted with a retaliatory motive and has not alleged a chronology of events from which a

retaliatory motive might plausibly be inferred"); <u>Bishop v. Does</u>, 350 F. App'x 941, 944

(5th Cir. 2009) (citing <u>Jones</u>, 188 F.3d at 325) (Inmate's claim that prison official

transferred him out of a unit in retaliation for his previous litigation against staff members

failed because he made only conclusory allegations and had no evidence of retaliatory

intent.); <u>Leggett v. Comer</u>, 280 F. App'x 333, 336 (5th Cir. 2008) (retaliation claim was

frivolous when inmate failed to show that his property would not have been missing but

for his letter-writing about prison officials, and that retaliatory intent motivated the

inadequate inventory and storage of his property).  Spann has alleged only his personal,

conclusory belief that he was the victim of retaliation. He has failed to allege any facts

showing that any prison official possessed a retaliatory motive with regard to charging

him with possession of contraband, delaying his early release so they could hold a

disciplinary hearing, his conviction and loss of good time credits, his transfer to the jail,

the criminal charge and the confiscation of his personal property.

Further, Spann has failed to show any actual injury or actual infringement of his

First Amendment right to complain through proper channels about alleged misconduct

resulting from the alleged retaliation.   He has no constitutional rights to possess contraband or avoid disciplinary action, <u>Sullivan v. DeRamcy</u>, 460 F. App'x 374, 375 (5th Cir. 2012); <u>Aldridge v. Davenport</u>, No. 4:13CV118-DMB-JMV, 2015 WL 1291911, at *3 (N.D. Miss. Mar. 23, 2015); remain on work release, in a halfway house or in any facility, <u>Siebert v. Chandler</u>, 586 F. App'x 188, 189 (5th Cir. 2014) (citing <u>Olim v. Wakinekona</u>, 461 U.S. 238, 244-45 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976); <u>Yates v. Stalder</u>, 217 F.3d 332, 334 (5th Cir. 2000)); <u>Woods v. Edwards</u>, 51 F.3d 577, 582 (5th Cir. 1995); <u>Bitner v. Weber</u>, No. 14-1459, 2015 WL 692964, at *5 (E.D. La. Jan. 23, 2015), <u>report & recommendation adopted</u>, 2015 WL 693015 (E.D. La. Feb. 18, 2015); obtain an early release by entry into a prison rehabilitation program, <u>Ramos v. Chandler</u>, No. 4:14-CV-168-A, 2014 WL 12508256, at *1 (N.D. Tex. Mar. 19, 2014), <u>aff'd</u>, 588 F. App'x 362 (5th Cir. 2014) (citing <u>Gallegos-Hernandez v. United States</u>, 688 F.3d 190, 195 (5th Cir. 2012)); retain accumulated good time credits when convicted of a disciplinary infraction, even if the disciplinary report was false, so long as he was afforded due process protection through a hearing where some evidence supported the conviction, <u>Harris v. Smith</u>, 482 F. App'x 929, 930 (5th Cir. 2012); <u>Triplett</u>, 2015 WL 893057, at *5 (citing <u>Collins v. King</u>, 743 F.2d 248, 253-54 (5th Cir. 1984)); <u>Solomon v. Chapa</u>, No. EP-13-CV-111-PRM, 2013 WL 8479865, at *6 (W.D. Tex. Dec. 27, 2013) (citing <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 454 (1985)); possess unrestricted personal property, <u>Quaak v. Yeager</u>, No. H-11-2100, 2012 WL 950183, at *6 (S.D. Tex.

Mar. 19, 2012) (citing <u>McRae v. Hankins</u>, 720 F.2d 863, 869 (5th Cir. 1983), <u>abrogated on other grounds by</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 531-33 (1984)); or avoid a criminal charge for an alleged criminal act, for which he would have "the full panoply of rights due a defendant during the criminal prosecution," <u>United States v. Smith</u>, 839 F.3d 456, 458 (5th Cir. 2016) (quotation and citations omitted), and which in this case was dismissed nolle prosequi.

Thus, Spann alleges no violation of a specific constitutional right as a result of any allegedly retaliatory acts and he has not shown the existence of retaliatory motive, causation or actual prejudice. Accordingly, his retaliation claim is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983.

III.   <u>FALSE DISCIPLINARY CHARGES/LOST GOOD TIME</u>

Spann's claims that his constitutional rights were violated based on false or fabricated disciplinary charges resulting in his loss of 180 days of good time credit fail to state a claim of violation of his constitutional rights and must be dismissed.

In <u>Sandin v. Connor</u>, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to his placement in lockdown or other denial of prison privileges as disciplinary punishment begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States." <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983);

accord Richardson v. Joslin, 501 F.3d 415, 418-19 (5th Cir. 2007).  In Sandin, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (citations omitted).  Thus, in Sandin, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Court held that due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in Wolff v. McDonnell, 418 U.S. 539 (1974), and Hewitt, 459 U.S. at 460.

In addition, the Supreme Court intimated in Sandin that prison disciplinary proceedings resulting in the loss of good time credit may result in an "atypical and significant hardship" implicating due process concerns because they affect the duration of the inmate's imprisonment.   Sandin, 515 U.S. at 479-84.  Without specifically addressing Sandin, the Fifth Circuit held in a case involving the Texas good time statute that prison disciplinary action that results in an inmate's loss of good time credits must be accompanied by certain procedural safeguards of the type described in the pre-Sandin Supreme Court decision in Wolff.  Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997).  Similarly, in Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997), the Fifth Circuit stated that a prisoner's "loss of 30 days good time credit calls for a more careful analysis" of applicable due process principles.

26

In Wolff, the Supreme Court held that because disciplinary proceedings are not part of a criminal prosecution, the prisoner need not be afforded "the full panoply of rights" provided in criminal proceedings. Wolff, 418 U.S. at 556. Nevertheless, the Wolff Court held that prison officials must afford the prisoner some due process in disciplinary proceedings before imposing punishment, including notice of the violation, a hearing and some opportunity to present evidence on the prisoner's behalf. Id.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." Madison, 104 F.3d at 767. "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." Wilkinson v. Austin, 545 U.S. 209, 225 (2005) (citations omitted). The Fifth Circuit held in Madison that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." Madison, 104 F.3d at 768; accord Hernandez v. Velasquez, 522 F.3d 556, 563 (5th Cir. 2008); Dixon v. Hastings, 117 F. App'x 371, 372 (5th Cir. 2005); Malchi v. Thaler, 211 F.3d 953, 957-58 (5th Cir. 2000). In Hernandez and Madison, the Fifth Circuit held that such restrictions do not represent the type of atypical, significant deprivation in which a state might create a liberty interest. Hernandez, 522 F.3d at 563; Madison, 104 F.3d at 768. Some examples of prison

27

hardships that <u>would</u> qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction. <u>Sandin</u>, 515 U.S. at 484.

In addition, the case law is clear that an inmate's allegation that a prison official asserted false disciplinary charges against him fails to state a claim under Section 1983 when the prisoner is afforded due process protection through a subsequent hearing. <u>Harris</u>, 482 F. App'x at 930 (5th Cir. 2012) (quoting <u>Collins</u>, 743 F.2d at 253-54); <u>accord</u> <u>Doolittle v. Holmes</u>, 306 F. App'x 133, 134 (5th Cir. 2009); <u>Moore v. Butler</u>, 211 F.3d 593, 2000 WL 329165, at *1 (5th Cir. Mar. 17, 2000).

On the other hand, "a forfeiture of 'good time' credit . . . normally prevents a due process claim from being foreclosed by <u>Sandin</u>" because it affects the quantity, rather than the quality, of time served. <u>Collier v. Dunaway</u>, No. 08-4264, 2008 WL 4809467, at *2 (E.D. La. Oct. 31, 2008) (citing <u>Madison</u>, 104 F.3d at 768); <u>Bean v. McConnell Unit</u>, No. C-06, 223, 2006 WL 2346295, at *3 (S.D. Tex. Aug. 11, 2006)).  Nonetheless, Spann's due process claim regarding his lost good time credit, for which his complaint seeks declaratory, injunctive and monetary relief, must be dismissed at this time for three reasons.

First, Spann's testimony and written submissions establish that the actions taken against him based upon the allegedly false disciplinary charge and resulting hearings were

that he lost 180 days of good time credits and continued to be incarcerated for the remainder of his sentence.  It is well established that the

> Due Process Clause confers a liberty interest in punishment that is not "qualitatively different from the punishment characteristically suffered by a person convicted of crime." . . .  So long, however, as the punishment is "within the normal limits or range of custody which the conviction has authorized the State to impose," there is no violation of a protected liberty interest conferred by the Due Process Clause.

Richardson, 501 F.3d at 419 (quoting Sandin, 515 U.S. at 478, 479 n.4) (internal quotations omitted).  Thus, requiring an inmate to serve out the remainder of the sentence imposed when he was convicted does not constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that particular forms of process of the type described in Wolff were required.  Id. (citing Sandin, 515 U.S. at 479 n.4).

Second, Spann received all appropriate due process of the type required by Wolff in connection with his loss of good time credits.

> "Where a prison disciplinary hearing may result in the loss of good time credits," due process requires:   "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in [the inmate's] defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."

Arceneaux v. Young, 369 F. App'x 620, 620 (5th Cir. 2010) (quoting Superintendent v. Hill, 472 U.S. 445, 454 (1985)).

Spann testified that he received a written description of the charge against him and received several hearings before the disciplinary board.  He stated that the board received the disciplinary reports and gave him the opportunity to provide his own testimony about the incident.  Under these circumstances, plaintiff received adequate due process in connection with the disciplinary charge against him, even to the extent that the proceedings resulted in loss of good time credits.  Id. (citing Wolff, 418 U.S. at 564-66).  Spann therefore fails to state a due process claim for which he would be entitled to relief under Section 1983.

Third, in Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state confinement, which has not been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus, is not cognizable under Section 1983.

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87 (emphasis in original) (footnote omitted).  Although the Supreme Court's decision in Heck concerned a civil action for monetary damages, the Fifth Circuit has also applied Heck in cases in which the plaintiff seeks injunctive relief, Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998) (citing Edwards v. Balisok, 520 U.S. 641, 645-46 (1997)), and in cases alleging loss of good time credit.  Toppins v. Day, 73 F. App'x 84, 2003 WL 21757342, at *5 (5th Cir. June 26, 2003) (citing Edwards, 520 U.S. at 648).

Spann's due process claim regarding the loss of good time is connected to the validity of the subject confinement to the extent he argues that his conviction of the disciplinary charge and the sanction of losing good time impacted his release date.  Heck, 512 U.S. at 479; Teague v. Quarterman, 482 F.3d 769, 778-79 (5th Cir. 2007); Toppins, 2003 WL 21757342, at *5 (citing Edwards, 520 U.S. at 648); Clarke, 154 F.3d at 190. When a disciplinary action resulting in the loss of good time credits "has not been reversed or overturned," it "fails to meet Heck, [and is] . . . properly dismissed." Toppins, 2003 WL 21757342, at *5; accord Swafford v. Cain, No. 13-0788-JWD, 2014 WL 4418537, at *5 (M.D. La. Sept. 8, 2014) (citing Edwards, 520 U.S. at 648; Montoya v. Jones, 118 F. App'x 797, 798 (5th Cir. 2004); Johnson v. Boland, No. 2:12-CV-0113, 2012 WL 2358157, at *1 (N.D. Tex. May 31, 2012)).

Spann's complaint and testimony and the disciplinary records he submitted indicate that he was convicted of a disciplinary charge of possession of contraband.  The Rayburn Warden's denial of plaintiff's appeal of the disciplinary conviction states that a Sheriff's

31

detective interviewed plaintiff's two co-workers, who, like Spann, were taken by ambulance to a hospital, and that the two men told the detective that they and Spann had smoked mojo.   The decision states that mojo was found in plaintiff's locker at his workplace during the Sheriff's investigation.   Record Doc. No. 24-2 at pp. 3-4.   Spann's penalty for conviction on this charge was the loss of 180 days of good time credit.   There is no indication in any of his written submissions or testimony that his conviction on the disciplinary charge was set aside in any of the ways described in Heck. Thus, any claim for relief that plaintiff asserts challenging his loss of good time credit is premature and must be dismissed under Heck.   As the Fifth Circuit has noted, the dismissal of plaintiff's Section 1983 claims is with prejudice to their being asserted again until the Heck conditions are met.   Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir. 1996)).

IV.   DELAYED RELEASE/DUE PROCESS

Plaintiff alleges that the Workforce Solutions Defendants failed to send to the DOC a timely certification that he had earned good time credits by completing the CTRP on December 16, 2015.   He asserts that this failure caused a delay in his early release until the scheduled date of January 13, 2016, which was then followed by further time served pending his disciplinary hearings and conviction until June 24, 2016, when he completed his DOC sentence.   Construed broadly, Spann's claim is that the Workforce Solutions Defendants violated his due process right in a liberty interest in early release based on earned good time credit.

The existence of a recognized liberty or property interest protected by the Constitution is a threshold requirement to a due process claim, regardless whether substantive or procedural due process rights are involved.  Martin v. Mem'l Hosp., 130 F.3d 1143, 1146, 1150 (5th Cir. 1997).  As previously stated, constitutionally protected liberty interests may be created in either of two ways:  by the Due Process Clause itself or by state law.  Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1986); Hewitt, 459 U.S. at 466; Richardson, 501 F.3d at 418-19.  However, the Fifth Circuit has established that "[t]he Due Process Clause does not itself confer a liberty interest in a sentence reduction for completion of" a prison rehabilitation program.  Id. at 419.

> Where the Due Process Clause does not create a liberty interest, the government can create one by statute.  Such a statute confers a liberty interest that is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  For example, an action that "inevitably affect[s] the duration of [a] sentence" might violate a liberty interest created by statute.
>
> The hallmark of a statute that has not created a liberty interest is discretion. Where the statute grants the prison administration discretion, the government has conferred no right on the inmate.FN3  Thus, a "protected liberty interest exists only when a regulation uses mandatory language to place a substantive limit on official discretion."  A unilateral expectation of certain treatment is insufficient; a prisoner must "have a legitimate claim of entitlement to it."
>
>> FN3 The Court has cautioned against concluding that the converse of this statement is true:  Mandatory language does not necessarily create a protected liberty interest.

Id. (quoting Sandin, 515 U.S. at 483-84, 487; Rublee v. Fleming, 160 F.3d 213, 217 (5th Cir. 1998); Bulger v. U.S. Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995)) (citing Meachum, 427 U.S. at 226-28) (internal citations omitted).

Louisiana law requires the DOC to establish, for all persons committed to and in its physical custody, such "rehabilitation programs as are consistent with available resources, physical custody, and appropriate classification criteria," La. Rev. Stat. § 15:828(A)(1) (emphasis added), and to promulgate rules and regulations "to encourage voluntary participation by inmates in certified treatment and rehabilitation programs." Id. § 15:828(B).

> The rules and regulations may include provisions for furloughs or the awarding of earned credits toward the reduction of the projected good time parole supervision date. Offenders may be awarded up to ninety days toward the reduction of the projected good time parole supervision date for satisfactory participation in each approved program pursuant to the provisions of this Subsection, but no offender shall receive more than three hundred sixty days total earned credits toward the reduction of the projected good time parole supervision date for program participation.

Id. (emphasis added). The statute thus grants discretion to the Secretary (who is not a defendant in this case) regarding whether to establish rehabilitation programs and to award good time credit, and such awards are subject to legitimate penological interests in inmate discipline and classification.

CTRP credit is awarded according to Section 15:828(B) and the procedures set forth in the DOC's Regulation No. B-04-003.  For offenders housed in local jail facilities and transitional work programs, the regulation provides that:

> 2)  The facility's Program Coordinator shall immediately certify when an offender has . . . successfully completed . . . a CTRP.  The form shall be submitted to the Sheriff or Administrator for signature and forwarding to the Records Office of the appropriate regional facility . . . .
> 3)  The Records Supervisor/Manager or designee shall review the form to verify the offender's eligibility for the awarding of credits.
> 4)  If approved, the Records Supervisor/Manager or designee shall award the CTRP credit in accordance with the [CTRP] Awards Chart . . . .  The revised Master Prison Record shall be returned to the Sheriff or Administrator of the local jail facility or transitional work program, who shall provide the document to the offender.  The approved Form B-04-003-A and the revised Master Prison Record shall be filed in the offender's Master Record.

DOC Regulation No. B-04-003, ¶¶ 9(B)(2)-(4), http://www.lajudicialcollege.org/wp-content/uploads/2012/10/C-1.-DOC-Reg-Treatment-and-Rehab-Earned-Credits.pdf (emphasis added).  Thus, although the regulation requires "immediate" certification, the subsequent steps in the process necessarily take some time.  The DOC advises on its website that "[c]redits for program completion can take up to 90 days, though they are usually awarded within a few weeks.  They are prioritized based on the offender's discharge date."  DOC website, http://doc.la.gov/frequently-asked-questions (visited Nov. 14, 2016).  Neither the Louisiana statute nor DOC Regulation No. B-04-003 provides any penalty or directs prison officials to award good time credits or schedule an early release if the certification is not sent "immediately."

35

Spann alleges that defendants did not send the required certification until after December 31, 2015, at least two weeks after he completed the program, and that his release was not scheduled until January 13, 2016.  Even if these allegations are true, plaintiff fails to state a constitutional violation in this regard.  First, it is well established that a state's failure to follow its own prison rules, regulations or procedures does not constitute a due process violation, without an independent constitutional violation.  Barker v. Owens, 277 F. App'x 482 (5th Cir. 2008) (citing Giovanni v. Lynn, 48 F.3d 908, 912-13 (5th Cir. 1995)); Ruiz v. LeBlanc, 643 F. App'x 358, 364 (5th Cir. 2016) (citing Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996)); Richardson v. Thornton, 299 F. App'x 461, 463 (5th Cir. 2008) (citing Myers, 97 F.3d at 94).  Thus, even if defendants did not comply with the regulation by sending the certification "immediately," their inaction does not implicate Spann's constitutional rights in a way that might serve as a basis for Section 1983 relief.

Second, regardless of when the certificate was sent, Spann fails to state a due process violation because he neither lost any good time credit as punishment as a result of the delay in reporting his certification nor served any more time than his original sentence imposed.  Spann's complaint in this claim is that defendant Mitchell did not certify his good time credits for completing a CTRP program on December 16, 2015 until sometime in January 2016, which caused a delay in plaintiff's early release date until January 13, 2016.  However, he testified that he was indeed scheduled for early release

on January 13, 2016.  He was not deprived of any good time credits prior to that date and therefore had no right to any process with respect to the delay.   There is no constitutionally protected liberty interest in conditional release before the expiration of a valid sentence, Greenholtz v. Inmates of the Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979); Richardson, 501 F.3d at 419-20; May v. Tex. Bd. of Pardons & Paroles, 370 F. App'x 550, 552 (5th Cir. 2010); Malchi v. Thaler, 211 F.3d at 958, nor does the Constitution guarantee an inmate good time credit for satisfactory behavior while in prison.  Wottlin v. Fleming, 136 F.3d 1032, 1036 (5th Cir. 1998); Madison, 104 F.3d at 768.  Spann's due process "claim fails because he never served more time than was initially imposed for his . . . conviction."  Hanna, 415 F. App'x at 536 (quoting Zinermon v. Burch, 494 U.S. 113, 125 (1990)) (citing Richardson, 501 F.3d at 418-19).

Thus, Spann alleges no violation of a specific constitutional right as a result of any delay in certifying his CTRP completion.  Accordingly, his due process claim based on that delay is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983.

## V.   RACE DISCRIMINATION

Spann alleges that defendants discriminated against him on the basis of his race because he was subjected to disciplinary and criminal charges when he was accused of possessing mojo, while three Caucasian inmates on work release who were found in possession of mojo were treated differently.  Plaintiff denied the allegations against him

and testified that they were not supported by any evidence of possession.  He testified that Page was caught with mojo in 2015, but nothing happened to him; that Hobgood was found with mojo in his possession on May 30, 2016 and was sent back to jail with a disciplinary write-up that was never processed; and that another white man, whose name Spann did not know, passed out while on work release and "allegedly had synthetic marijuana in his pocket."

"To state an equal protection claim, [plaintiff] must allege, inter alia, that similarly situated individuals have been treated differently and he must also allege purposeful or intentional discrimination."  McKnight v. Eason, 227 F. App'x 356, 357 (5th Cir. 2007) (citation omitted); accord Baranowski v. Hart, 486 F.3d 112, 123 (5th Cir. 2007).  "A prisoner must show that the prison official acted with a discriminatory purpose and thus cannot base an equal protection claim solely on a personal belief that he was a victim of discrimination.  Vague and conclusory allegations [of discrimination] are insufficient to raise an equal protection claim."  Jebril v. Joslin, No. C-07-436, 2008 WL 416240, at *8 (S.D. Tex. Feb. 12, 2008) (citing Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995); United States v. Galloway, 951 F.2d 64, 65 (5th Cir. 1992); Pedraza v. Meyer, 919 F.2d 317, 318 n.1 (5th Cir. 1990)); accord Jones v. Castro, No. SA-6-CA-846-NSN, 2007 WL 3396500, at *4-5 (W.D. Tex. Nov. 13, 2007) (citing Al-Ra'id v. Ingle, 69 F.3d 28, 32 (5th Cir. 1995)).

38

In the instant case, Spann has proffered only vague and conclusory allegations based solely on his personal, subjective belief that defendants discriminated against him, which are insufficient to state a claim for an equal protection violation.  As discussed previously, despite Spann's denials, defendants had evidence from the medical records and elsewhere that he had smoked mojo at work and that mojo was found in his locker. Plaintiff has cited nothing to support his conclusory and speculative belief that defendants intentionally treated him differently because of his race.  See Al-Ra'id v. Ingle, 69 F.3d 28, 32 (5th Cir. 1995) (conclusory allegations of racial malice insufficient to maintain equal protection claim); Portillo v. Brown, No. 2:07-CV-0031, 2009 WL 1160345, at *2 (N.D. Tex. Apr. 28, 2009) (citing Al-Ra'id, 69 F.3d at 32) (inmate's allegations that prison employee called him names, laughed at him and refused to dismiss disciplinary action against him based on his race were conclusory and failed to state a claim); Webber v. Ramos, No. EP-04-CA-426-KC, 2007 WL 1039214, at *6 (W.D. Tex. Mar. 21, 2007) (citing Al-Ra'id, 69 F.3d at 32); Taylor v. Johnson, 257 F.3d 470, 474 (5th Cir. 1995) (inmate failed to state an equal protection claim with allegations that prison employees discriminated against him based on his race when they removed him from one work assignment, denied him another particular work assignment and denied him the opportunity to file a formal complaint to challenge the work assignments.).

Accordingly, Spann fails to state a constitutional violation with respect to his equal protection claim.

VI.   <u>NO LIABILITY OF THE SHERIFF</u>

Spann has named former Sheriff Strain (now Sheriff Smith) as a defendant, although he has made no allegations that Sheriff Strain was personally involved in any of the actions about which he complains.  Thus, plaintiff names the sheriff as a defendant based solely upon the sheriff's official responsibilities over his deputies and the parish jail facility, alleging that Sheriff Strain failed to train and supervise his employees properly to prevent the alleged constitutional violations.

"There is no respondeat superior liability under section 1983."  <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996); <u>accord</u> <u>Field v. Corr. Corp.</u>, 364 F. App'x 927, 929 (5th Cir. 2010); <u>Cox v. Irby</u>, 281 F. App'x 390, 391 (5th Cir. 2008); <u>Kohler v. Englade</u>, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision.  <u>Sanders v. English</u>, 950 F.2d 1152, 1160 (5th Cir. 1992); <u>Baskin v. Parker</u>, 602 F.2d 1205, 1208 (5th Cir. 1979); <u>Barksdale v. King</u>, 699 F.2d 744, 746 (5th Cir. 1983).

To hold the sheriff liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation."  <u>Douthit v. Jones</u>, 641 F.2d 345, 346 (5th Cir. 1981); <u>accord</u> <u>Cox</u>, 281 F.

40

App'x at 391; <u>Kohler</u>, 470 F.3d at 1115.  "It is facially evident that this test cannot be met if there is no underlying constitutional violation." <u>Rios v. City of Del Rio</u>, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing <u>Breaux v. City of Garland</u>, 205 F.3d 150, 161 (5th Cir. 2000)); <u>accord</u> <u>Brauner v. Coody</u>, 793 F.3d 493, 501 (5th Cir. 2015).  In the instant action, plaintiff has failed to establish either that the sheriff was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of the sheriff and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 691-95 (1978); <u>Thompson v. Johnson</u>, 348 F. App'x 919, 921 (5th Cir. 2009) (citing <u>Mouille v. City of Live Oak</u>, 977 F.2d 924, 929 (5th Cir. 1992)); <u>Gates v. Tex/ Dep't of Protective & Regulatory Servs.</u>, 537 F.3d 404, 435 (5th Cir. 2008).  Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983.  <u>Monell</u>, 436 U.S. at 691-95; <u>Thompson</u>, 348 F. App'x at 921-22; <u>Mouille</u>, 977 F.2d at 929.  No such unconstitutional custom, usage or policy has been alleged in this case.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint asserting claims pursuant to 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE**, either as legally frivolous or for failure to state a claim upon which relief may be granted under 1915(A)(b)(1)  and 42 U.S.C. § 1997e(c)(1), or pursuant to Heck.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this _____9th_____ day of December, 2016.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.